**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GANNETT FLEMING WEST, INC.,
a New Mexico corporation,

      Plaintiff,

vs.                                                                                                            No. CIV 04-0459 JB/LFG

VILLAGE OF ANGEL FIRE, a municipal
corporation; ALVIN CLANTON, CHUCK
HASFORD, BONNIE BRASHEAR, WILLIAM
"HOOT" GIBSON, and RICHARD HILL, each
in his individual capacity as a Village official,
and JOHN and JANE DOES 1-10,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court on the Defendants' Motion to Dismiss, filed May 3, 2004 (Doc. 3). The primary issue is whether the Plaintiff Gannett Fleming West, Inc. ("Gannett") has stated a claim upon which relief can be granted in its complaint and, if not, whether the Court should grant the Defendants' Village of Angel Fire, Alvin Clanton, Chuck Hasford, Bonnie Brashear, William "Hoot" Gibson, and Richard Hill ("the Defendants") motion to dismiss as to these claims. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will grant the Defendants' Motion to Dismiss on Count V of the Plaintiff's Complaint (42 U.S.C. § 1983 claim). The Court declines to exercise its supplemental jurisdiction over the remaining Counts under 28 U.S.C. § 1367 and, accordingly, remands the remaining claims -- all of which sound in state law -- to state court.

**FACTUAL BACKGROUND**

Because this is a motion to dismiss filed pursuant to rule 12(b) of the Federal Rules of Civil Procedure, the Court must take as fact the allegations set forth in the Complaint, regardless of their truth or falsity. The Court acknowledges, however, that while the rules require it to assume the Complaint's allegations are true for this motion's purposes, the Defendants do not admit the Complaint's allegations and will, if the Court denies the motion, present their own version of the facts to the Court at the proper time and in the course of proper procedure.

This suit arises out of a contract, according to the Complaint, entered into and signed on March 11, 1998, which was to expire, by its own terms, on June 1, 2000 "unless earlier terminated . . . ." Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Acknowledgment of Debt, Violation of Civil Rights Pursuant to Section 1983, and Declaratory Judgment ¶ 13, at 5, No. 04-34-CV (8th Judicial Dist., Colfax County, State of N.M. March, 4, 2004).[1] The contract was for work on the proposed Angel Fire Assessment District AF-1-98. See Contract at 1. Section 2.4 of the contract says that Gannett will be compensated "by the percentage in Exhibit B." Contract at 2. Exhibit B to the contract states that Gannett's compensation will be "a percentage of the net construction cost." Id., Exhibit B Fee Schedule at 1. The Defendants contend that those sections define the amount of compensation to be paid and state that the amount of compensation is a percentage of net construction costs. See id.

The Defendants explain that, because there was no Assessment District established as of the time of the contract, the parties agreed that the engineer's fee for the basic engineering services would

---

[1] Gannett filed the Complaint state court, and the Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441. The Complaint, therefore, appears in the record as part of the Notice of Removal, filed April 27, 2004 (Doc. 1).

be based on "a percentage of the net construction cost." Complaint ¶ 19, at 6; Contract, Exhibit B Fee Schedule at 1. The Defendants assert that contracting parties typically set up the engineering services as a percentage of the net construction cost because the payment for the engineering will be done through monies obtained if and when an Assessment District is established and the project as constructed is completed, or in other words, when the governmental entity has the money through an assessment of the land benefitted by the improvements. See NMSA §§ 3-33-21 to 3-33-24 (1999). The Defendants suggest that is understood that there are many variables in a proposed project because the Assessment District may in fact not be formed or may be narrower than originally proposed or anticipated. See Motion to Dismiss at ; see also Complaint ¶ 19, at 6 (stating that the contract based a portion of the engineering fees on the "Total Construction Cost" "[i]n recognition of the variable nature of the project"). The Defendants argue that the engineer bears the risk of the project not going forward or being ultimately smaller than anticipated, as evidenced by the fact that no alternative fee method is set forth in the contract for such events. See Contract, Engineer's Fees, Invoices and Payment at 1-2.

The Complaint alleges that Gannett and the Village had previously entered into "percentage of construction cost" contracts before the contract at issue. See Complaint ¶ 12, at 4. Gannett, however, alleges that it did not mean to make compensation in this contract contingent upon receipt of funding by the owner. See id. ¶ 18, at 6. Rather, Gannett argues that it is understood in the engineering industry that when the project originally designed is not built -- or is terminated by the owner -- the engineers are entitled to reasonable payment for all services rendered, unless the contract unambiguously makes the obligation for payment contingent upon actual construction. See id. ¶ 20, at 6.

Gannett commenced work under the contract and, beginning on April 30, 1998, began billing the Village for the work on a monthly basis. See id. ¶ 22, at 7. Again, taking the Complaint's allegations as true, the Village was to make payments within thirty days of the submission of monthly invoices. See id. ¶ 17, at 5-6. The Village only paid one of Gannett's monthly invoices, dated August 31, 1998, in the amount of $34,406.25. See id. ¶ 25, at 7. The Village did not make any other payments on the monthly invoices for work performed in 1998, 1999, or 2000. See id.

The Village terminated the contract's HUD portion in December, 1998. See id. ¶ 30, at 8. Although the Village gave notice to Gannett to terminate the design work on the HUD portion of the project, the Village did not purport to terminate the contract entirely, nor did it assert that it was not liable for fees associated with the engineering services already performed by Gannett. See id. In February 1999, the Village passed a resolution to approve a smaller, non-HUD project. See id. ¶ 32, at 8-9. Gannett continued to perform "pre-construction" services, and continued to bill the Village monthly for its services as per the contract. See id. ¶ 33, at 9.

The Village then reduced the size of the project on two other occasions. See id. ¶¶ 34, 36, at 9. After holding public hearings and considering protests and objections, the Village adopted a resolution confirming the final project ("434 SAD") on June 13, 2000. See id. ¶¶ 37-38, at 9. Gannett then entered into an oral agreement with Donald Lusk, Village Administrator, which was later memorialized in a letter dated June 30, 2000, that Gannett would lower the interest rates on the late payments (from 12% to 8%) in exchange for being paid in full when the Village sold the bonds to fund the construction, but not later than September, 2000. See id. ¶ 39, at 10.

Gannett, however, did not receive any payment on the contract by September, 2000. According to the Complaint, by September, 2000, the Village owed Gannett $214,860.64, excluding

New Mexico gross receipts tax, but including interest accrued as to the HUD work -- for which the contract was terminated as of December 1998 -- and $304,669.64, excluding New Mexico gross receipts tax, and including interest on the non-HUD portion. See id. ¶ 41 at 10. In October, 2000, Gannett and the Village entered into a settlement agreement ("the 2000 Settlement Agreement") under which the Village acknowledged the debt owed to Gannett in the amount of $429,458.60, plus New Mexico gross receipts tax and accumulating interest at a rate of 8% per annum over 30 days. See id. ¶¶ 42-45, at 10-11. On November 22, 2000, the Village also issued a letter acknowledging the debt owed to Gannett. See id. ¶ 46, at 11-12. Relying on this debt acknowledgment, Gannett decided not to pursue legal action. See id. ¶ 48, at 12. The Village, however, still failed to pay Gannett and interest continued to accrue at the 8% interest rate. See id. ¶ 49, at 12.

The parties amended the contract effective on September 7, 2001. See id. ¶ 50, at 12. Among other things, the amendment provided Gannett additional services, including authorizing Gannett to prepare, on behalf of the Village, an application to the U.S. Department of Agriculture, Rural Utility Services ("RUS"), for loan money to finance the project's construction. See id. ¶ 52, at 13. Gannett prepared and submitted the application; the U.S. Department of Agriculture responded with a "letter of conditions." See id. ¶ 57, at 14. The Village has chosen, however, to not pursue those funds. See id. Gannett relied on the amendment to the contract as a further confirmation that the Village intended to pay the outstanding amounts due under the contract. See id. ¶ 55, at 13-14.

In response to Gannett's continuing demand for payment, the Village invoked dispute mediation under the Public Works Mediation Act, NMSA 1978 §§ 13-4C-1 to 13-4C-11. The Village, however, refused to mediate any amounts claimed by Gannett under the contract except for

the project finally authorized by the Village Council -- the 434 SAD project -- on which they reached a settlement.  See id. ¶¶ 61-62, at 15.  Gannett received $210,000 in accordance with this settlement agreement.  Gannett alleges that the settlement only addressed the 434 SAD project, and was not a settlement as to Gannett's other claims for work done on the earlier projects.  See id. ¶ 63, at 15.

## PROCEDURAL BACKGROUND

Gannett alleged five Counts, four of which are based on state law, and one -- Count V -- which is based on federal law (42 U.S.C. § 1983).  Count V alleges that the Defendants "deprived [Gannett] of property rights secured by the U.S. Const. amend. XIV and N.M. Const. Art. II, § 18 without due process of law and are in violation of 42 U.S.C. § 1983."  Complaint ¶ 91, at 20.  The Defendants removed the case to federal court by the Defendants pursuant to 28 U.S.C. § 1441.[2]  See Notice of Removal, filed April 27, 2004 (Doc. 1).

The Defendants move the Court to dismiss this action, contending that the Complaint fails to set forth any claims upon which the Court can grant relief.

## LAW ON 42 U.S.C. § 1983

The Supreme Court of the United States has held that a simple breach of contract claim does not give rise to a claim under 42 U.S.C. § 1983.  In Shawnee Sewerage & Drainage Co. v. Stearns, 220 U.S. 462 (1911), the Court held that when "[a] simple breach of contract is . . . alleged[,] . . . . [t]he breach of a contract is neither a confiscation of property nor a taking of property without due process of law."  Id. at 471.  Other federal courts have also found that breach of contract claims do

---

[2] 28 U.S.C. 1441(c) states: "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

not fall within the scope of constitution violations that § 1983 protects. More recently, the Supreme Court affirmed that, where a state provides a remedy thought a breach of contract suit in state court, there is no due process violation where a contract is not paid by the state. See Lujan v. G&G Fire Sprinklers, Inc., 532 U.S. 189, 195-96 (2001). In Lujan v. G&G Fire Sprinklers, Inc., the Supreme Court assumed, without deciding, that the state statutory scheme depriving contractors of payment constituted a property interest, but then held "it is an interest, unlike the interests discussed above [that require a pre-deprivation hearing to comport with due process], that can be fully protected by an ordinary breach-of-contract suit." 532 U.S. at 196. Accordingly, the Court ruled: "We hold that if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." 532 U.S. at 197. As the United States Court of Appeals for the Eighth Circuit has held: "[I]t is well established that 'a simple breach of contract does not rise to the level of a constitutional deprivation.'" Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 446 (8th Cir. 1995)(quoting Medical Laundry Serv. v. Board of Trustees of Univ. of Ala., 906 F.2d 571, 573 (11th Cir. 1990)). The United States District Court for the District of Kansas held that a state's alleged breach of contract for failure to pay just compensation for Medicare services provided by the plaintiff did not give rise to "a claim for the deprivation of a property right without due process." See Bock Assoc. v. Chronister, 951 F.Supp. 969, 975 (D. Kan. 1996)(quoting Dover Elevator Co. v. Ark. State Univ., 64 F.3d at 446). In reaching its determination, the district court recognized that "[s]everal circuit courts have held that alleged breaches in contracts to provide services to governmental entities are not violations of due process rights either because a property interest was not involved or because the right to litigate the matter in court was sufficient 'due process.'" Id. (providing a comprehensive list of cases from other circuits).

The Supreme Court of New Mexico has also held that a breach of contract case, "for which the state provides a complete and adequate remedy[,]" does not raise any "issue concerning procedural due process." Scott v. Bd. of Comm'rs of the County of Los Alamos, 109 N.M. 310, 312, 785 P.2d 221, 223 (1989).[3]  In Scott v. Bd. of Comm'rs of the County of Los Alamos, the Supreme Court of New Mexico held: "Just as the availability of a post-deprivation state tort remedy satisfied the dictates of procedural due process in Parratt [Taylor, 451 U.S. 527 (1981)], so plaintiffs' right to sue for breach of contract in the state court system comports with the Fourteenth Amendment here." Id. at 109 N.M. at 312, 785 P.2d at 223.

## LAW ON SUPPLEMENTAL JURISDICTION

28 U.S.C. § 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  One situation in which the court may decline to exercise supplemental jurisdiction over an otherwise related claim under subsection (a) is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  In addition, the court may decline to exercise its jurisdiction over claims that "raise[] a novel or complex issue of State law." Id. at § 1367(c)(1).

---

[3] Gannett appears to be raising only a procedural due process claim.  In any case, a substantive due process claim requires that the Court find the Defendants' conduct shocks the Court's conscience. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-47(1998); Radecki v. Barela, 146 F.3d 1227, 1230 (10th Cir. 1998).  The Court does not believe that the allegations in Gannett's Complaint rise to the high level of conduct necessary to shock the Court's conscience. See, e.g., Herts v. Smith, 345 F.3d 581, 588 (8th Cir. 2003)(holding that, while the school district's failure to renew an school district employee's contract may have been "constitutionally suspect for other reasons, it cannot be said to rise to the level of conscience-shocking.  The reasons given for the non-renewal of [the employee's] contract were not trivial, nor were they wholly unsupported.").

## ANALYSIS

In their response to the Defendants' motion, Gannett recognizes that a simple claim for breach of contract does not give rise to a § 1983 claim. See Plaintiff's Opposition to Defendants' Motion to Dismiss, filed May 20, 2004 (Doc. 9). The State of New Mexico provides a clearly defined process for Gannett to assert his claim. That process is a breach of contract suit, which Gannett filed in Colfax County, New Mexico. The breach of contract claim gives no right to a civil rights claim under § 1983; all of the process which is due the state has provided through a state court action for breach of contract. Section 1983 does not apply in these circumstances.

Gannett, however, contends that the claim does much more than assert a breach of contract; instead, he contends that the Defendants' actions constituted a deprivation of due process. Gannett asserts that the Defendants deprived it of due process by the failure to ensure that Gannett was paid for its services when they expressly invoked state statutory authority under NMSA 1978 § 3-33-11 to "direct" Gannett, by Village resolution, to perform the engineering services that the statute requires as the first step in the assessment district process.[4] Gannett alleges that the Defendants then engaged in a continuing pattern of conduct designed to induce Gannett to continue to perform services, to extend payment dates, and to refrain from filing suit. Gannett contends that the Village had the contractual right to terminate the contract at any time without cause if it anticipated -- before Gannett performed the services called for -- that it would not proceed with the project, would not complete part of the contract, would not have legally available funds, or if the Village did not want to take

---

[4] NMSA 1978 § 3-33-11(A) states: "Whenever the governing body determines that the creation of an improvement district is necessary by the provisional order method, the governing body shall by resolution direct the engineer to prepare preliminary plans and an estimate of cost for the proposed improvement district."

action to obtain legally available funds to pay Gannett. Gannett argues that, if the Village did not have legally available funds, the Village had the means to acquire funds by virtue of the RUS application, the assessment of water charges pursuant to NMSA 1978 § 3-27-5, or by other available statutory fundraising authority, to pay accrued amounts. Gannett accuses the Village of continuing to knowingly and intentionally leading Gannett on in a fashion that caused Gannett to accrue hundreds of thousands of dollars of charges, including thousands owed to third-party subcontractors, instead of terminating the contract and paying for the services already provided when charges began to accrue at a higher rate than the Village was willing to fund; of paying Gannett from existing funds; or of taking action to obtain specifically allocated funds via water charges, RUS funds, or otherwise. While avoiding payment, and now contending that it has no obligation to pay, the Village received and used the benefit of Gannett's work to determine the feasibility of different-sized projects and finally to approve the reduced-sized "434 SAD" project, just as § 3-33-11 contemplated.

Gannett contends that it is this "entire cluster of facts and circumstances," including the possible need for injunctive relief to force the Village to take the necessary action to obtain legally available funds, which distinguishes this case from the simple breach of contract context. Plaintiff's Opposition to Defendants' Motion to Dismiss at 22. Gannett contends that its rights, under the Contract, together with the implied right to payment under §§ 3-33-11 and 3-27-5 and the Defendants continuing pattern of conduct, provide the necessary property interest required to support a § 1983 due process claim. It is this "cluster of facts" that arguably makes its civil rights claim more than a mere breach of contract. Gannett tries to make this distinction by saying that the Village performed a number of actions which have resulted in Gannett not being paid.

The bottom line, however, is that Gannett says it did not get paid and that is what injured it.

A claim that a defendant has not paid the plaintiff what it owes pursuant to a contract is a simple contract claim. Adding details about the breach may make it more complex, but it does not change the basic nature of the claim. More important, adding more details about the way in which the contract was purportedly breached does not change that cause of action, nor does it convert it into a civil rights action. The Complaint makes a detailed statement of a breach of contract claim, not a due process claim.

Taking all the allegations contained in Gannett's complaint to be true, the Court finds that the series of occurrences between Gannett and the Defendants do not rise to the level of a deprivation of due process. Gannett's claim of violation of due process is, at its core, a claim that the Defendants did not pay Gannett for money due on the contract. It is, like the Complaint's other counts, an action or proceeding to collect money from the municipality. While the allegations discuss possible reasons for what the Defendants did, the case remains a breach of contract case. While Gannett discusses state law and governmental actions and inactions, Gannett's action is, in essence, one for breach of contract. Despite the Defendants' continued assurances and other actions indicating they intended to pay Gannett for his services, as well as the resolution directing Gannett to perform his services, these actions do not convert a breach of contract case into something else. Gannett alleges a simple breach of contract based on the Defendants' failure to pay him for services rendered. The Court, therefore, finds that the series of occurrences comprise, at most, a simple breach of contract claim and, because a simple breach of contract claim does not constitute a § 1983 action, the Court will dismiss Count V of the Plaintiff's complaint. The Court also notes that there is no reason to believe that the state court system cannot adequately address Gannett's breach of contract claim, and provide sufficient redress for any alleged injuries. Moreover, because the remaining claims require the

interpretation of state law, the more appropriate forum to resolve such claims is the state court.

It may be true that the mere fact that a breach of contract may be intertwined in the dispute does not mean that a plaintiff cannot state a § 1983 or due process cause of action of constitutional dimensions. See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985)(holding that property interest in a person's means of livelihood supports requiring a pre-deprivation procedure before the employee may be fired); Eckles v. State of Oregon, 603 Or. 380, 399-403, 760 P.2d 846, 858-60 (holding that an act that purports to abrogate the state's contractual obligation violates the Oregon constitution's provision based on the contract clause of the United States constitution, article I, § 10, while an act that only requires actions that violate the contract is a breach that does not support a contract clause violation); Ramsey v. Bd. of Educ. of Whitley County, Ky., 844 F.2d 1268, 1274-75 (6th Cir. 1988)("[A]n interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983."); Cockrell v. Bd. of Regents of N.M. State Univ., 27 N.M. 478, 983 P.2d 427, 431-32 (1999)(collecting § 1983 cases dealing with termination of employment and impact of contract provisions, and related materials on qualified immunity defenses), vacated on other grounds, 527 U.S. 1032 (1999). But Gannett frankly concedes that to find a § 1983 claim on the allegations in its Complaint would be expanding the law further than it has gone to date. See Transcript of Motion Hearing at 2:4-6 (held November 17, 2004)("Your Honor, again, we acknowledge that this was somewhat of an extension, but I don't believe it is that great of an extension, given the drift of the law,

if you will.");[5] id. at 2:9-11 ("The point, again, Your Honor, is -- and, again, is it an extension? Yes. Is it an illogical one? No.").[6]  "Gannett Fleming acknowledges that this case presents a unique set of facts that prior § 1983 opinions have not addressed." Plaintiff's Opposition to Defendant's Motion to Dismiss at 24.

The expansion, or stretch, of current law that Gannett seeks is too great.  Gannett concedes that the employment/tenured professor cases are the closest cases that it has. See Transcript at 13:5-15.  But the law Gannett cites is, in the end, irrelevant.  It cites to Cleveland Bd. of Educ. v. Loudermill, which is an employment case, dealing with property rights in the context of keeping one's job within a public employer.  Most of Gannett's other cited cases are similarly employment cases, and the Supreme Court has carved out a special niche for property interests in a person's means of livelihood.  And the discussion in Eckles v. State of Oregon involves article I, § 21, of the Oregon constitution, which is based on article 1, § 10 of the United States constitution, not the due process clause.  See Eckles v. State of Oregon, 603 Or. at 399, 402-03, 760 P.2d at 858, 860; Transcript at 13:22 - 14:2.[7]

No court has extended the employment line of cases to encompass all breaches of contract.  Indeed, the courts have consistently held that a breach of contract does not give rise to a civil rights claim.  Gannett's attempt to avoid the result that the caselaw strongly suggests indicates that adding

---

[5] This citation to the transcript of the hearing refers to the Court Reporter's finalized version filed separately in the record as an excerpt.

[6] This citation to the transcript of the hearing refers to the Court Reporter's finalized version filed separately in the record as an excerpt.

[7] This citation to the transcript of the hearing refers to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

details -- even if they are relevant -- to an asserted breach do not make it into a due process claim.

The civil rights claim is not Gannett's main claim. It finds no support in current caselaw. Gannett's claim is a simple claim for breach of contract for which New Mexico law provides ample remedy without elevating the dispute to a matter of constitutional importance.

## **REMAND**

Remand to federal court was pursuant to 28 U.S.C. § 1441. See Notice of Removal ¶ 3, at 2. The parties do not have, nor do they allege to have, any other basis of federal jurisdiction, such as diversity of citizenship. See Notice of Removal ¶ 3, at 2; Transcript at 10:4-11.[8] And the Court will dismiss the only claim on which the Court has original, federal jurisdiction.

The Court declines to exercise jurisdiction over the remaining claims. All the remaining claims sound in state law. Moreover, both parties mention a number of state statutes, see §§ 3-27-5; 3-33-11; 3-33-14.1; 3-33-21 to 3-33-24; 13-4C-1 to 13-4C-11; 37-1-16; 37-1-17; 37-1-23; 37-1-24; the Bateman Act, 1978 NMSA §§ 6-6-1 to 6-6-19 (1968); and the Defendants mention article VIII, § 14, and article IX, § 4 of the New Mexico constitution, see Defendants' Motion to Dismiss at 12. The case raises issues of municipal funding, taxing, sovereign immunity, and statutes of limitations for claims against municipalities. These are issues best left to the New Mexico courts rather than federal court. After all, that is the forum that Gannett chose.

Furthermore, discovery has not yet begun. Yet the Defendants suggest that, if the Court considers Gannett's affidavit, they may need to do discovery. It is thus possible that discovery may be necessary before any court decides the state law claims. Given that this case may be in the early

---

[8] This citation to the transcript of the hearing refers to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

stages, the case should proceed in state court rather than in federal court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988)(Noting that there is no mandatory rule of dismissing state claims after the court dismisses the only claim establishing federal jurisdiction, but stating that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. . . .").

28 U.S.C. § 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  One situation in which the court may decline to exercise supplemental jurisdiction over an otherwise related claim under subsection (a) is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  In addition, the court may decline to exercise its jurisdiction over claims that "raise[] a novel or complex issue of State law." Id. at § 1367(c)(1).  The Court therefore remands the remaining state law claims to state court.

**IT IS ORDERED** that the Motion to Dismiss is granted in part.  The Court will dismiss Count V with prejudice.  The Court will dismiss the rest of the motion as moot.  The remaining claims are remanded to the Eighth Judicial District, Colfax County, State of New Mexico.

———————————————————
UNITED STATES DISTRICT JUDGE

*Counsel:*

Barry D. Williams
Rikki L. Quintana
Bannerman &Williams, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Joseph F. Canepa
  Village Attorney
  Village of Angel Fire
Canepa & Vidal, P.A.
Santa Fe, New Mexico

    -and-

Douglas A. Baker
Martha G. Brown
Modrall, Sperling, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*